UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

United States of America

    v.

Matthew G. Wilson

Case No. 18-cr-180-1-SM
Opinion No. 2019 DNH 208

**O R D E R**

Defendant moves to suppress evidence found in a backpack in his possession when he was arrested on an outstanding warrant, as well as derivative evidence.  He contends that the backpack was searched without a warrant, and the search was not otherwise reasonable under any recognized exception to the Fourth Amendment's warrant requirement.  The government objects, arguing that the warrantless search was plainly lawful under the "search incident to arrest" exception or, alternatively, under the "inventory" exception.  After an evidentiary hearing on the motion, the court invited additional briefing on a specified issue:  Whether the "inevitable discovery" rule operates to render the evidence admissible even if it had been improperly seized initially.

**Background**

Rochester Police officers responded to a complaint about a domestic disturbance outdoors, near some local woods.  Near the wood line, the officers came upon the defendant and a woman who

1

fit the descriptions given.  The officers stopped them to investigate.  Defendant identified himself as Christopher Landry, but could not provide a social security number or any other identifying information.  The officers performed a cursory pat down search of defendant's person to ensure that he had no weapons, and, in the process, reached into his pockets and removed a lighter, a small bag containing drugs (methamphetamine), and a vial of testosterone.  Sergeant Smith, one of the officers, advised defendant that he would not be charged with drug possession because that evidence was obtained during a "pat down" (presumably conceding that he had exceeded the permissible scope of such protective searches).  Defendant was wearing the backpack during the pat down, but it was not searched at that time.

Defendant was with Nicole Goodwin, who appeared to the officers to have been recently crying.  She was upset.  Both defendant and Ms. Goodwin denied any criminal activity, and denied that any assaults or domestic violence had occurred between them.

The police officers obtained a photograph of Christopher Landry from the dispatch officer, and it plainly was not a photograph of the defendant.  When confronted with that fact,

defendant still did not provide his correct identity. The dispatch officer advised that Landry had a cousin named Matthew Wilson who had used Landry's name in the past, and, significantly, that there was an outstanding arrest warrant for Wilson. Hearing the radio transmission, another officer reported that he was familiar with Matthew Wilson and was en route to see if "Landry" was in fact Wilson. The officer arrived shortly thereafter and positively identified the defendant as Wilson. Defendant was placed under arrest on the outstanding warrant.

Before handcuffing defendant, Officer Forrest removed defendant's backpack and handed it to Sergeant Smith, who took possession of it and moved several feet away, where he opened it and dumped the contents onto the ground. Ms. Goodwin had attempted to obtain possession of the backpack upon defendant's arrest, and defendant told the officers that she could take custody of it. But the police refused to surrender it to Goodwin, on grounds that it remained defendant's property.

While Smith was dumping the contents of the backpack, Forrest was searching defendant's person incident to his arrest. Forrest found additional small quantities of controlled substances, and seized defendant's cellphone. By that point the

backpack had already been emptied, and Smith observed a gallon-sized plastic bag containing what appeared to be a significant quantity of a controlled substance.  Smith promptly returned the dumped contents to the backpack, making no effort to make a record of the items found inside.  A warrant was later obtained authorizing a search of defendant's seized cellphone.

Defendant was taken to the local police station, where he gave an inculpatory statement.  The backpack was inventoried at the station by Officer Forrest, who recorded, in his police report, a list of the items found, and noted that the drugs and property had all been logged into evidence.

Sergeant Smith testified at the hearing that, because the defendant was under arrest on an outstanding warrant issued by the New Hampshire Superior Court, the officers planned, at first, to take him to the Strafford County House of Corrections, rather than to the Rochester Police station.  And, being aware that the House of Corrections would not take "bulk items" like backpacks, and that the Rochester Police Department would, therefore, be securing and storing the backpack until it was eventually returned to defendant, Smith dumped out the contents to check for weapons and perishable items.  Smith offered that quickly inventorying the contents in this manner would also

permit the retrieval of phones or wallets or other non-bulk personal items that defendant might then be allowed to take with him to the House of Corrections. Smith said that he was also looking for anything that might have confirmed defendant's identity.

The discovery of drugs on defendant's person and what appeared to be a significant quantity of drugs in the backpack, however, resulted in a change in plans. Defendant was not taken to the County House of Corrections but, instead, he and his belongings were taken to the police station for booking and further investigation of the apparent drug possession offenses.

**Discussion**

The government's first justification for the backpack's warrantless search — that it was reasonable under the "incident to arrest" exception — presents a number of nuanced issues yet to be resolved in this circuit. It is well understood that a warrantless search is per se unreasonable under the Fourth Amendment, unless one of a "few specifically established and well-delineated exceptions" applies. United States v. Wurie, 728 F.3d 1, 3 (1st Cir. 2013) (quoting Arizona v. Gant, 556 U.S. 332, 338 (2009)) (internal quotation marks omitted). "One of those exceptions allows the police, when they make a lawful

arrest, to search 'the arrestee's person and the area within his immediate control.'" Id. (quoting Gant at 339) (internal quotation marks omitted).

"A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." United States v. Robinson, 414 U.S. 218, 235 (1973). In Chimel v. California, 395 U.S. 752 (1969), the Supreme Court determined that the search incident to arrest exception allows a search for "any evidence on the arrestee's person in order to prevent its concealment or destruction" and a search of "the area into which an arrestee might reach in order to grab a weapon or evidentiary items." Chimel, at 763. The exception is based upon the need to ensure the safety of police officers, and to ensure preservation of evidence that might otherwise be lost or destroyed. Id.; Gant, at 339. Accordingly, a search of the "person" incident to arrest is always justified by the arrest, and a search of an area into which an arrestee might reach is permitted as necessary to provide for the safety of officers or the preservation of evidence.

But searches of areas into which an arrestee might reach
that cannot be justified on those grounds — officer safety or
preservation of evidence — do not come within the "incident to
arrest" exception.  United States v. Chadwick, 433 U.S. 1
(1977), abrogated on other grounds by California v. Acevedo, 500
U.S. 565 (1991).  "In Chadwick, the court struck down
warrantless searches of 'luggage or other personal property not
immediately associated with the person of the arrestee' that the
police have 'reduced . . . to their exclusive control,' because
such searches are not necessary to preserve destructible
evidence or protect officer safety.  433 U.S. at 15."  Wurie, at
6; see also Gant at 339 ("If there is no possibility that an
arrestee could reach into the area that law enforcement officers
seek to search, both justifications for the search-incident-to-
arrest exception are absent and the rule does not apply.").

As noted recently by the Tenth Circuit, "[w]hether a search
[incident to arrest] is 'of the person' or of the area within
the arrestee's 'immediate control' — that is, the 'area from
within which he might gain possession of a weapon or
destructible evidence — is a critical distinction.'"  United
States v. Knapp, 917 F.3d 1161, 1165 (10th Cir. 2019) (quoting
Chimel at 763).  The Supreme Court "later reinforced this
distinction, albeit in dicta, by noting that arrests create a

reduced expectation of privacy in an arrestee's person, but not

in possessions within her immediate control."  Id. (quoting

Chadwick, at 16 n.10).  The Tenth Circuit concluded that the

better rule recognizes that searches of the person incident to

arrest extend properly to searches of an arrestee's clothing,

including containers concealed under or within her clothing.

Id. at 1167.  But visible containers in an arrestee's hand or

possession, like a purse, or the backpack at issue here, "are

best considered to be within the area of an arrestee's immediate

control — thus governed by Chimel — the search of which must be

justified in each case [unlike the search of an arrestee's

person]."  Id.


That does seem to be the better rule, and under it, the

question becomes whether, in this case, the backpack was within

the area that the arresting officers could "reasonably have

believed . . . [defendant] could have accessed . . . at the time

of the search."  Knapp, 917 F.3d at 1168 (quoting Arizona v.

Gant, 556 U.S. at 344 (emphasis added)).  The Third Circuit also

construes Gant as "focusing attention on the arrestee's ability

to access weapons or destroy evidence at the time of the search,

rather than at the time of the arrest, regardless of whether the

search involved a vehicle."  Id. (citing United States v.

Shakir, 616 F.3d 315, 318 (3rd Cir. 2010)).

As in United States v. Leo, 792 F.3d 742, 750 (7th Cir.
2015), it is inconceivable that, at the time of the search at
issue here, defendant could have lunged for the backpack, opened
it, and grabbed a weapon contained in it, or destroyed drugs or
other evidence of a crime.  Defendant was in the physical
custody of Officer Foster, was handcuffed, was undergoing a
search of his person, and was in close proximity to and under
the control of other officers as well.  The backpack had been
taken by Sergeant Smith and moved far enough away from
defendant, that, as Sergeant Smith candidly testified, defendant
could not have accessed the backpack or its contents before it
was searched.  The search, then, would not pass muster under the
Fourth Amendment's search-incident-to-arrest exception, at least
not under the analytical framework adopted by the Tenth Circuit.

The Court of Appeals for this circuit has yet to weigh in
on the distinctions to be drawn between time of arrest and time
of search, or with respect to whether the search of an
arrestee's person necessarily includes searches of any visible
containers, like purses, briefcases, boxes, or backpacks, that
the arrestee might be touching or carrying when arrested, or
whether separating such a container from the arrestee, moving it
out of the arrestee's reach, and securing it, obviates any need

to immediately search for possible weapons or to preserve any
potential evidence.

These are all distinctions about which courts can and do
disagree.  The governing principles are, to say the least,
evolving.  The government's position here is not entirely
without merit, of course, and one might well think it passing
strange that a backpack or briefcase within an arrestee's
possession when the arrest is effected is searchable incident to
arrest if (and while) the arrestee is close enough to it to grab
or access it, but is not searchable incident to the arrest if
the police move it out of his or her reach before executing the
search.  Surely the operative rule cannot be that the container
must be searched within the risk zone in order to satisfy both
Chimel's purposes and Gant's seeming temporal trigger (time of
search rather than time of arrest).

Nevertheless, the "better rule" described above will, in
most cases, encourage police to separate arrestees from carried
baggage, backpacks, purses, etc., to eliminate any potential
safety risk, secure them, and, absent some other exigent
circumstance, seek a warrant authorizing a search for evidence
contained within.  The law in this circuit with respect to these
discreet issues, as noted, is neither clear nor fully developed,

and, applying the better rule noted above, the backpack search would not pass muster under Chimel and Gant.  But, it is not necessary here to further expound upon or resolve those issues, because the evidence discovered and seized is otherwise admissible.


Inventory Search

The government's alternative justification for the warrantless search is that it was reasonable under the "inventory" exception.  Inventory searches, carried out routinely in accordance with a standardized policy setting out reasonable criteria, are reasonable searches under the Fourth Amendment, notwithstanding the absence of a warrant.  Boudreau v. Lussier, 901 F.3d 65, 73 (1st Cir. 2018); United States v. Richardson, 515 F.3d 74, 85 (1st Cir. 2008).


The Rochester Police Department does have a written standardized inventory search policy.  It provides in relevant part that:

> During the booking process, Rochester Police Officers shall conduct an inventory search of all prisoners.  The purpose of this search is threefold: 1) to protect the property of the prisoner, 2) to protect the Rochester Police Department and its members against unwarranted claims of lost or stolen property, and 3) to protect the officer(s) from potential dangers.

11

The inventory search shall include the body and
clothing of any person taken into custody, any
property they have on their possession at the time of
their arrest or detention, including any closed or
locked containers.

See Rochester Police Dept. Policy #1.2.4, Ex. No. 1, Docket

No. 22.


The policy appropriately establishes a regular and

routine practice of searching and inventorying all property

in the possession of an arrestee at the time of his or her

arrest.[1]  It also unambiguously provides that the inventory

will be conducted "during the booking process," which

routinely occurs at the station (where the "book" is kept —

now likely a digital records system).

---

[1] Defendant's backpack was seized, or taken into police custody,
upon his arrest.  Defendant argues that it should have been
promptly handed over to Ms. Goodwin in accordance with her
contemporaneous offer to take possession of it and defendant's
expressed consent.  Had the police done so, defendant argues, no
inventory search would have been necessary and none of the
factors justifying an inventory search would be relevant.  But,
the police properly obtained possession of the backpack upon
arresting defendant, and while they could have handed it over to
Ms. Goodwin, the police were not required by the Fourth
Amendment to do so.  Colorado v. Bertine, 479 U.S. 367, 373-74
(1987); Illinois v. Lafayette, 462 U.S. 640, 647 (1983); see
also United States v. Coccia, 446 F.3d 233, 240 n.7 (1st Cir.
2006); United States v. Skillern, 947 F.2d 1268, 1276 (5th Cir.
1991).

Sergeant Smith probably thought the backpack search was lawful as one incident to defendant's arrest, but he also said he considered it to be a field inventory search as well. As noted, he explained that, initially, the defendant was to be taken to the Strafford County House of Corrections (because he was arrested based upon an outstanding Superior Court warrant), and Sergeant Smith was aware that the County facility does not accept bulk items like backpacks along with detainees. The backpack, then, would have to be taken by the arresting officers to the Rochester Police Department, after delivering the defendant to the County facility, for inventorying and storage. But, because defendant would be allowed to take some items with him to the County facility (items that might be in the backpack, like a wallet or phone), and to check for weapons, perishable items, and perhaps evidence of identity, Smith says he began the "inventory" process immediately on site. As it turned out, the drugs found on defendant's person, as well as in the backpack, dictated a change in plans — he was taken to the Rochester Police Station, rather than the County facility, for further investigation and booking.

It is doubtful that the "field" inventory search, or "field start" of the booking process, argument offered by the government could survive serious scrutiny. The reality seems to

13

be that the backpack search was neither a bona fide inventory

search carried out in accordance with the Department's written

policy, nor was it a bona fide inventory search carried out in

accordance with any County policy.  Rather, Smith promptly

dumped the backpack contents as part of a search for inculpatory

evidence that he thought authorized as being incident to

defendant's arrest.


    While Smith may also have vaguely thought that an

"inventory" also sufficed as a backup justification, it is plain

here that the indicia of a legitimate inventory search are far

too tenuous and the contraindications far too strong to support

such a finding.  Smith, for example, made no effort to identify

and record the various items in the backpack, as one would do if

legitimately conducting an inventory.  Florida v. Wells, 495

U.S. 1, 4 (1990) ("The policy or practice governing inventory

searches should be designed to produce an inventory.")  And the

"booking process" was hardly begun in the field.  An arrest in

the field is, of course, quite distinct from the routine

administrative tasks associated with actually "booking" a

detainee.  Suggesting that every arrest followed by a search of

the arrestee's possessions is merely a geographically and

functionally displaced commencement of the Rochester Police

Department's "booking process" is to suggest that inventory

searches in Rochester consist of every immediate search of a

detainee's possessions upon arrest, whether authorized as

incident to arrest or not.


    The field search, as carried out, would also not serve the

necessary underlying purposes of an inventory search (the

purposes required to justify a warrantless search under the

Fourth Amendment).  Given Smith's approach, there was no record

of what was found at the scene sufficient to provide protection

to defendant with respect to the identity of property in the

backpack, or to the police with respect to future claims of lost

or stolen property (in transit perhaps).  Smith's memory of what

he saw, alone, would hardly suffice in either context.


    The field inventory search theory offered in this case has

the look of not much more than a convenient afterthought, or an

undeveloped understanding of the exception.  The backpack search

conducted in this case certainly is not the type of procedure

recognizable under the inventory exception to the Fourth

Amendment's warrant requirement.  And, of course, labeling a

search as an "inventory" cannot be a "ruse for a general

rummaging in order to discover incriminating evidence."  Wells,

495 U.S. at 4.  The government's justification of the

warrantless search as a "field inventory search" is rejected as
being unsustainable under these facts.


Inevitable Discovery

But one thing is certain.  Once defendant was arrested on
the outstanding warrant, the contents of his backpack were
inevitably, without doubt, going to be searched under the
Rochester Police Department's written inventory policy.
Defendant was properly under arrest on an outstanding warrant.
He was going to be transported to either the County facility or
the station; the backpack would be inventoried at either
destination.  He was transported to the police station, where he
was going to be detained, pending local investigation of at
least the drugs discovered on his person, and pending later
delivery of his person on the Superior Court's warrant.  He was
going to be, and was, formally "booked" at the station, and, as
part of that booking process, his person, clothing, backpack,
and any other items in his possession at the time of his arrest,
were necessarily going to be searched and inventoried pursuant
to the Department's written policy.


Evidence improperly obtained under the Fourth Amendment
may, nevertheless, be admissible, notwithstanding the
exclusionary rule, if that evidence would have been discovered

inevitably.  In United States v. Almeida, 748 F.3d 41, 49 (1st

Cir. 2014), our court of appeals held evidence improperly

discovered in an arrestee's wallet admissible because, like

here, an inventory search following his arrest would have

inevitably led to its discovery.  See also United States v.

Babilonia, 854 F.3d 163, 179 (2d Cir. 2017); United States v.

Allen, 713 F.3d 382, 387-88 (8th Cir. 2013).


    Under the circumstances presented here, then, it is certain

that the defendant, having been taken into custody on an

outstanding arrest warrant, and unlawful drugs having been found

on his person during a valid search incident to his arrest, was,

inevitably, going to have both his person and possessions

subjected to a routine inventory search during the booking

process related to his detention.  That the backpack may well

have been searched prematurely, without a required warrant, did

not affect the inevitability of the valid inventory search

process conducted during the booking process and consistently

with the written inventory policy directives.  The inventory

search at the station was both inevitable, and independent of

Sergeant Smith's field activity, would without question have

exposed defendant's possession of the drugs, and application of

the inevitable discovery rule does not, in this case, undermine

the warrant requirement of the Fourth Amendment.  See United

States v. Zapata, 18 F.3d 971, 978 (1st Cir. 1994).  Finally,
that Sergeant Smith probably had subjective investigative
motives when he dumped the backpack's contents also had no
effect on the inevitability or regularity of the inventory
search performed at the station and discovery of the contraband.

## Conclusion

For the reasons given, the defendant's motion to suppress
(doc. no. 16) is hereby denied.


**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 10, 2019

cc:  Jarad Hodes, AUSA
     Seth R. Aframe, AUSA
     William E. Christie, Esq.
     U.S. Probation
     U.S. Marshal